MONARCH ROOFING & SHEET METAL COMPANY and Pacific Employers Insurance Company, Petitioners,

v.

Benjamin LeRoy PULLUM and the State Industrial Court, Respondents.

No. 43195.

Supreme Court of Oklahoma.

June 23, 1970.

Edwin W. Ash, Rogers, Donovan & Rogers, Tulsa, for petitioners.

Harry V. Rouse, Tulsa, G. T. Blankenship, Atty. Gen., for respondents.

WILLIAMS, Justice.

Parties will be referred to as they appeared before the State Industrial Court. Claimant on May 9, 1966, was working for respondent as a "roofer". Claimant and two other men were grinding up "rock pitch". Small particles of the material got into his eyes and he could not see. Claimant was sent to Hillcrest Hospital where he was examined by Dr. P. The foreign particles were removed from his eyes. Eye drops and analgesic were prescribed. A patch was placed on the left eye. Dr. P. also examined the claimant on May 11. He testified the corneas of the eyes to be "essentially healed" and dis-

charged the claimant from further medical care. In his final report Dr. P. states that he could "see no permanent injury to the patient at that time."

Claimant testified that he had never had any trouble with his eyes before the accident; that at the time he was released by Dr. P. his eyes were still swollen, hurting and he could not open them. He consulted an attorney who sent him to Dr. G.

Dr. G. examined and treated the claimant on May 11, 13, 24 and June 14, 1966. On the first examination, Dr. G. found the claimant to have "an acute congestive conjunctivitis, both eyes, with a purulent discharge from both lower eye lids, with both eyelash rows being matted together with inspissated secretions." His diagnosis was "acute keratoconjunctivitis iritis, following a traumatic injury (chemical and foreign body) to the eyes." He measured claimant's visual acuity as being 20/200 to the right eye and 20/70 to the left eye. Dr. G. treated the claimant with various medications and examined him a second time on May 13, 1966, and again on May 24, 1966, when he found claimant's vision to be 20/50 in each eye. Dr. G. made his final examination on June 14, 1966, and found a "resolution of the epithelial staining associated with the keratitis, however, the sub-epithelial area is revealed to have multiple areas of sclerosis of a fine nebular consistency." He found claimant's visual acuity in both eyes to be 20/60 which he said "represents a 35% reduction" "based on the history obtained." Dr. G. testified "You ofttimes see conjunctivitis as a result of a trauma or a foreign body in the eye."

A member of the State Industrial Court on August 15, 1966, entered an award in favor of the claimant. The State Industrial Court, sitting en banc, on December 12, 1966, vacated the award and remanded the case for further medical evidence. On December 27, 1966, claimant filed a supplemental report of Dr. G. Respondent insisted on the right to cross-examine Dr.

G. The deposition of Dr. G. was taken and filed.

Dr. G. in his testimony and supplemental report testified that claimant's disability of 35% to his eyes is permanent.

A second and final hearing of the case occurred on December 5, 1967. The supplemental report and deposition of Dr. G. were submitted in evidence. In his deposition, Dr. G. testified as follows:

"Q. Doctor, is any part of this loss of vision due to the conjunctivitis that he had?

"A. No, I wouldn't say that that's a direct cause for the loss of vision.

"Q. What was the direct cause, in your opinion?

"A. In my opinion, the direct cause was the hypermetropia which was detected.

"Q. Will you explain that, Doctor, for the benefit of the record?

"A. Farsightedness.

"Q. He had the hypermetropia before he ever had this accident did he not, Doctor?

"A. In my opinion, he did, yes.

"Q. Then, the conjunctivitis that he had, of course, was a temporary condition, was it not, Doctor? I mean, it was successfully handled by medication?

"A. Based on the successful treatment, yes."

The award of the trial judge affirmed by the State Industrial Court sitting en banc allows the claimant temporary compensation in the amount of $253.33 and 30% permanent partial disability to each eye, or 60 weeks compensation amounting to $2,400.00.

Findings of fact of the State Industrial Court supported by reasonable competent evidence are conclusive and binding on this Court and will not be disturbed on appeal. Flint Construction Co. v. Woods, Okl., 425 P.2d 995; Williamson v. Grimm, 425 P.2d 992. However, in the

instant case, it is our opinion that the award herein is not supported by competent evidence. To our minds, claimant's own medical testimony conclusively establishes that the conjunctivitis of which he complained had been successfully handled (healed) by medication and that his loss of vision was caused by hypermetropia (farsightedness), not the conjunctivitis resulting from the accident, and that the hypermetropic condition existed prior to the accident giving rise to the claim herein. From this testimony, we conclude the Industrial Court erred in granting claimant compensation for loss of vision.

Award vacated.

All the Justices concur.